IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

RODNEY A. HURDSMAN                                                                          PLAINTIFF
#2170782

v.                                            4:22-cv-00227-JM-JJV

VIAPATH TECHNOLOGIES, INC., *et al.*                                                    DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.    INTRODUCTION**

Rodney A. Hurdsman ("Plaintiff") is a prisoner in Abilene, Texas who has filed this *pro se* action raising claims stemming from his confinement in the Saline County Detention Center ("SCDC") in Arkansas from October 2014 to April 2015. His remaining claims are that Defendants Sheriff Rodney Wright, Aventiv Technologies, LLC, and Saline County, Arkansas committed four constitutional violations and the Arkansas tort of intrusion when they recorded telephone conversations with his attorney, without his consent or a warrant, and provided transcripts of those conversations to federal and state prosecutors. (Doc. 41.) All other claims and Defendants have been previously dismissed. (Doc. 39, 64.)

1

All remaining Defendants have filed a Joint Motion for Summary Judgment seeking dismissal as a matter of law. (Docs. 119-21.) Defendants Wright and Saline County ("County Defendants") have also filed a separate Motion for Summary Judgment raising arguments that only apply to them. (Doc. 122). Plaintiff has filed a single Response to both Motions that is verified under penalty of perjury and includes an embedded Statement of Disputed Facts.[1] (Doc. 128.) Defendants have filed a Joint Reply. (Doc. 131.) After carefully reviewing the pleadings and for the following reasons, I recommend the: (1) Joint Motion for Summary Judgment be GRANTED, and Plaintiff's remaining claims be DISMISSED with prejudice; (2) County Defendants' Motion for Summary Judgment be GRANTED in part and DENIED in part; and (3) case be CLOSED.

II. **SUMMARY JUDGEMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere

---

[1] Pleadings signed under penalty of perjury are equivalent to an affidavit for summary judgment purposes. *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994–95 (8th Cir. 2001).

speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. FACTS

Plaintiff's relevant criminal history is complicated. In February 2014, he was arrested in Wise County, Texas on state theft of property charges. (Doc. 119-6); *Hurdsman v. State*, No. 02-17-00319-CR, 2018 WL 5832116 (Tex. App. Nov. 8, 2018). Plaintiff was indicted on those state charges in June 2014, and released from custody sometime thereafter. (*Id.*) In September 2014, Plaintiff and his wife were arrested in Louisiana and held in custody there on unspecified charges. On October 21, 2014, the couple was arrested on state criminal charges in connection with an armed bank robbery in Malvern, Arkansas, transferred from Louisiana to Arkansas, and booked into the SCDC where they remained until April 27, 2015. (Doc. 41); *Arkansas v. Hurdsman*, 63-CR-14-736 (Saline County Circuit Court).

It is undisputed that throughout his confinement at the SCDC, the inmate telephone services were operated by Defendant Aventiv through its subsidiary Securus. (Docs. 88-6, 120, 128.) But the parties disagree what the SCDC's policy and/or practice was during the relevant time period for allowing detainees to make private, unrecorded telephone calls to their attorneys.

Christie Griffin, who is a current SCDC employee, says in her Affidavit she worked at the jail while Plaintiff was held there and is familiar with the procedures that were in effect at that time for making private, unrecorded telephone calls to counsel. (Doc. 119-2.) Ms. Griffin says

during intake, Plaintiff received a copy of the SCDC's Inmate Rules providing that collect calls to individuals other than attorneys could be made on the wall-mounted black phones in each pod ("pod phones"). (*Id*. at 3.) The pod phones contained a written yellow placard warning users that "THESE CALLS ARE RECORDED." (*Id*. at 4.) The Inmate Rules clearly admonished detainees that calls made from pod phones were "subject to being recorded and monitored by Saline County Jail Staff." (*Id.* at 3, 13) And at the beginning of each call, a pre-recorded statement said the call was "subject to recording and monitoring." (*Id.* at 5.)

To call attorneys, detainees were allowed to use the "blue and black phone" located in the intake area. (*Id.* at 3-5, 13.) Contrary to its name, that phone was a standard, black desktop phone. (*Id*.) Thus, for clarity, I will refer to it as the "attorney phone." To use the attorney phone, a detainee had to submit a request to the Jail Administrator including the attorney's name and phone number. (*Id*.) After authorization from the attorney, the detainee could use the attorney phone to make private calls that were not monitored or recorded. (*Id*.) If the attorney did not give such authorization, unspecified other "arrangements" would be made to allow the detainee to call an attorney from the pod phone. (*Id*.)

Plaintiff disagrees with Ms. Griffin's affidavit. Specifically, Plaintiff says he never received a copy of the SCDC's Inmate Rules, no one at the SCDC ever told him about a phone policy as described by Ms. Griffin, the pod phones were the only phones available to him, and that there was not a yellow placard by the pod phones warning users that their calls were being recorded. (Doc. 128 at ¶ 13, 32-36.) Plaintiff also claims he gave his attorney's phone numbers to Defendant Sheriff Wright and other unnamed SCDC employees, who "agreed and acknowledged" that any calls Plaintiff made on the pod phones to those numbers would not be recorded or monitored despite what the recorded message said. (*Id*.)

4

Plaintiff claims that, despite those assurances, Sheriff Wright recorded five attorney-client phone calls and gave the recordings to state and federal prosecutors. (Doc. 128 at ¶ 48.) But he has not produced <u>any</u> evidence to support that assertion. To the contrary, during discovery and after Court intervention, Plaintiff produced recordings of only two calls that he made to the law offices of Jim Shaw, who was representing Plaintiff in connection with the theft charges pending against him in Texas. (Docs. 90, 95.) And Defendants have provided transcripts of those two telephone calls. (Docs. 119-3, 119-4.)

First, on an undisclosed date, Plaintiff used the pod phone to make a two-minute call to Shaw's office. (Doc. 119-3.) The call began with a recorded message announcing to the receiver that it was "a collect call from" and then paused to give Plaintiff a chance to say his name. Instead of doing so, Plaintiff said: "Hey, Mom, don't send any money because they're just gonna take it for medical." (*Id*. at 3.) The recording then stated the call was being made by an "inmate at the Saline County Detention Center" and is "subject to recording and monitoring." (*Id*.) Plaintiff then asked someone named "Denise" if "Ray" was available. (*Id*.) After Denise explained he was in court, Plaintiff asked what happened to his personal property that was seized when search warrants were executed in connection with the Texas theft case. Denise explained the attorney was able to get some of Plaintiff's personal property back, but the State kept the rest because there was no proof it belonged to him. Denise then told Plaintiff that nothing further was going to happen in that case until he returned to Texas, and the call ended.

On an unspecified date, Plaintiff used the pod phone to make a second, twelve-minute call to Shaw's office. (Doc. 119-4.) As occurred previously, the call began with the recording announcing it was a collect call. Plaintiff again made the puzzling statement telling "Mom" not to send money because it would be taken for medical, and the recording announced to both parties

that the call was "subject to recording and monitoring." (*Id*. at 3.)  Plaintiff and Shaw then discussed his personal property that was seized in Texas, how Plaintiff believed the property rightfully belonged to him, and the efforts that were being made to get it back.  Plaintiff told Shaw that a detective in Texas had warrants issued against him every time he was released on bail, claimed that detective was responsible for his arrest in Louisiana, and said federal authorities seized cash and his car during his arrest.  Plaintiff also briefly mentioned a civil proceeding regarding his home mortgage, his son's arrest, and his inability to write to his wife who was also in custody.  Plaintiff denied any involvement in the Arkansas bank robbery and complained he had not yet been indicted or received counsel in that matter.  Finally, Shaw told Plaintiff nothing would happen in connection with his Texas theft charges until he returned to that state and that the charges might get dropped if Plaintiff was convicted of bank robbery.  The call then ended.

On April 15, 2015, the Arkansas Circuit Court *nolle prossed* the charges stemming from the bank robbery, Plaintiff was released from the SCDC two days later, and he was transferred to Williamson County, Texas to face unspecified charges that were later dismissed.[2]  (Doc. 128 at ¶ 72-75); *Arkansas v. Hurdsman*, 63-CR-14-736 (Saline County Circuit Court); *Hurdsman v. State*, No. 02-17-00319-CR, 2018 WL 5832116, at *1 (Tex. App. Nov. 8, 2018).  In September 2017, a jury found Plaintiff guilty of the theft charges in Wise County, Texas and sentenced him, as a habitual offender, to seventy-five years in prison.  (*Id*.)  In the same month, he was indicted in the Eastern District of Arkansas on federal charges related to the bank robbery in Malvern,

---

[2] Plaintiff has also filed a lawsuit in the Western District of Texas alleging that while he was held in the Williamson County Jail from April 27, 2015 to July 7, 2017, county authorities and a private phone company infringed several of his constitutional rights, violated federal and state wiretapping statutes, and committed torts under Texas law.  See *Hurdsman v. Gleason*, 1:22-cv-254-RP (W.D. Tex. 2022).  That lawsuit is still pending.

Arkansas. *United States v. Hurdsman,* 4:17-CR-275 (E.D. Ark.)   Two years later, in September 2019, Plaintiff pled guilty to aiding and abetting the bank robbery in Arkansas, and he was sentenced to seventy-one months in federal prison.   *Id.*; *United States v. Hurdsman*, No. 19-3138, 821 F. App'x 664 (8th Cir. Sept. 11, 2020).

## IV.   JOINT MOTION FOR SUMMARY JUDGMENT

### A.   State Actor Requirement

Separate Defendant Aventiv argues the four constitutional claims (access to the courts, right to counsel, search and seizure, and free speech claims) raised against it should be dismissed with prejudice because there is no evidence it was a state actor.   I agree.

A § 1983 action can only be filed against a state actor acting under color of state law.   *See* 42 U.S.C. § 1983; *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022).   A private entity, such as Aventiv, can become a state actor if it: (1) performs a traditional, exclusive state function; (2) is a willful participant in joint activity with the state; or (3) is pervasively entwined with the state.   *Roberson,* 42 F.4th at 928; *Wickersham v. City of Columbia,* 481 F.3d 591, 597 (8th Cir. 2007).   Applying the first test, courts have held a private telephone company is not a state actor, for § 1983 purposes, merely because it has contractually agreed to provide telephone services to a prison or jail.   *See, e.g., Rindahl v. Noem*, No. 4:20-cv-04044, 2020 WL 6728840, at *6 (D.S.D. Nov. 16, 2020); *Brooks v. Securustech.net,* No. 13-cv-4646, 2014 WL 737683, at *5-6 (E.D.N.Y. Feb. 24, 2014); *Wofford v. Pub. Comm. Servs.*, No. 4:11-cv-1884, 2012 WL 550134, at *3 (E.D. Mo. Feb. 19, 2012); *Streater v. Thaler*, No. 9:11-cv-0068, 2012 WL 3308109, at *13-14 (E.D. Tex. July 2, 2012).   This is because providing telephone services is not a traditional state function.   *Id.*

In his Second Amended Complaint, Plaintiff alleged Defendant Aventiv went one step

further and was actively involved in recording telephone calls with his attorney and turning them over to authorities without his knowledge, consent, or a warrant. Under similar circumstances, other courts have found private companies became state actors, under the second test, when they monitored and recorded calls between detainees and their counsel. *See Washington v. Reliance Tel. Sys.*, No. 1:19-cv-124, 2019 WL 5580954, at *3 (D.N.D. Oct. 29, 2019); *Walen v. Embarq Payphone Servs. Inc.*, No. 06-14201, 2009 WL 3012351, at *3-4 (E.D. Mich. Sept.17, 2009). That <u>allegation</u> was enough to survive a motion to dismiss. (Docs. 62, 64.)

But now the parties are at summary judgment where mere allegations are no longer sufficient. And Plaintiff has not offered any <u>evidence</u> suggesting Defendant Aventiv was involved in recording his attorney-client calls and handing them over to prosecutors. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) ("When the movant makes a *prima facie* showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact"); *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (to avoid summary judgment, "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor").

In an attempt to do so, Plaintiff points to the Declaration of Stefanie Prichard, who is the Intellectual Property Manager for Securus, and the Master Service Agreement between Securus and the SCDC. (Doc. 128 at 38-52.) But those two documents only establish that Securus provided the SCDC with the software for choosing which phone calls to record and then stored the recorded calls for one year before automatically deleting them. (*Id.*) The documents do not, in any way, demonstrate that Securus determined what phone calls to record or decided which calls to give to prosecuting authorities. To the contrary, Plaintiff admits in his verified Response that

"Sheriff Wright disregarded the contract [with Securus] and further instituted a custom and practice of recording all SCDC inmate outgoing phone calls and making himself the final decision maker on disclosing those calls to law enforcement agencies regardless if they were private attorney privileged phone conversations or not."  (at ¶ 43, *see also* ¶ 40, 57.)

As explained by the Eighth Circuit, for a private entity to be a state actor "the one unyielding requirement is that there be a close nexus not merely between the state and the private party, but between the state and the alleged deprivation itself."  *Roberson*, 42 F.4th at 929; *see also Wickersham*, 481 F.3d at 597 (a private entity is a state actor if it "has acted together with or has obtained significant aid from state officials in furtherance of the challenged action") (internal quotation omitted).   Because Plaintiff has not come forward with any such evidence, I recommend the four constitutional claims against Defendant Aventiv be dismissed with prejudice.

     **B.**    ***Heck* Doctrine**

All three Defendants argue Plaintiff's four constitutional claims are barred by the United States Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994).   In *Heck*, the Court explained:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgement in favor of the plaintiff would necessarily imply the invalidity of a conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, would <u>not</u> demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.

*Id.* at 487 (emphasis in the original).

Plaintiff says his convictions were "not based on any information from those phone calls." (Doc. 128 at ¶ 6.)   Instead, as will be discussed in detail later in this Recommendation, Plaintiff

9

says that by listening to his recorded calls with counsel, state and federal authorities gained a "tactical advantage" by prosecuting their cases in an order that guaranteed Plaintiff would receive the longest possible sentences. (*Id*. at ¶ 10, 47; Doc. 119-5 at 9.) Any such tactical advantage prosecutors may have gained does not necessarily invalidate the legality of his otherwise lawful convictions or sentences. In other words, even if a Court found that prosecutors had coordinated the prosecution of their cases, that would not necessarily invalidate the lawfulness of Plaintiff's convictions or sentences. Thus, I conclude the *Heck* doctrine does not apply here. *See Andersen v. Cnty. of Becker*, No. 08-5687, 2009 WL 3164769, at *6 (D. Minn. Sept. 28, 2009) (*Heck* did not bar the plaintiffs' § 1983 claims regarding the recording of their phone calls with counsel because their "convictions and pleas were not based on any information from those telephone calls").

    **C.    Access to the Courts Claim**

Plaintiff says Defendants violated his constitutional right to access the courts.[3] To proceed to trial with that claim, Plaintiff must have evidence of: (1) the hinderance of a nonfrivolous and arguably meritorious underlying legal claim, (2) challenging a prisoner's criminal conviction, sentence, or the conditions of confinement, (3) that resulted in an actual injury. *See Lewis v. Casey,* 518 U.S. 343 (1996); *Holt v. Howard,* 806 F.3d 1129, 1133 (8th Cir. 2015); *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). In this respect, actual injury means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. And, importantly, it is not enough that court

---

[3] It is unclear whether an access to the courts claim falls under the First, Sixth, and/or Fourteenth Amendment. *See Christopher v. Harbury,* 536 U.S. 403, 415, n.12 (2002) (noting "the basis of the constitutional right of access to courts" is "unsettled").

access "could be impeded;" instead, "a prisoner must show that it actually has been" impeded. *Johnson v. State of Mo.*, 142 F.3d 1087, 1089 (8th Cir. 1998); *see also Johnson v. Hamilton*, 452 F.3d 967, 974 (8th Cir. 2006) (conclusory allegations of actual injury, without evidentiary support, "must fail").

In his Second Amended Complaint, Plaintiff was evasive about who received his recorded phone calls with counsel or how he was harmed. (Doc. 41). In his verified Response, Plaintiff now says transcripts of his calls with counsel were given to United States Assistant Attorney Joan Shipley, "FBI Special Agent Michael Thompson and/or FBI Task Force Officer Shawn Scott," and Wise County District Attorney Gregory Lowery. (Doc. 128 at ¶ 1, 9, 16, 46.) But he has not offered <u>any</u> evidence to support that assertion.

Further, as previously mentioned, Plaintiff concedes in his verified Response that his convictions were not "based on any information from those phone calls." (Doc. 128 at ¶ 6.) Instead, he says the recorded calls "allowed prosecutors to be privy to trial and defense strategy, giving them a tactical advantage in charging, timing, and prosecuting matters in which an 18-month plea offer [in the Texas case] ended in a 75-year prison sentence." (Doc. 119-5 at 9.) Again, he has <u>not</u> offered any evidence to support that assertion. And, as pointed out by Defendants, the Texas state court and the Fifth Circuit Court of Appeals have already concluded no such plea offer existed. *Hurdsman v. Lumpkin*, No. 22-10280, 2023 WL 4043931, at *2 (5th Cir. June 15, 2023).

Finally, the call transcripts establish beyond dispute that Plaintiff did not make any incriminating or harmful statements during the two recorded phone calls. Plaintiff believes the recorded calls somehow tipped off prosecutors that he had multiple state and federal criminal charges pending against him and that they used that secretly gained information to coordinate the

prosecution of their cases for the maximum sentencing impact. (Doc. 128 at ¶ 7-10.) But the existence of any outstanding criminal charges was already a matter easily accessible to prosecuting authorities. Because Plaintiff has no evidence he was actually injured as a result of the alleged recording and dissemination of his attorney-client phone calls, I conclude all three Defendants are entitled to summary judgment, as a matter of law, on his access to the courts claim. *See Clemons v. Lombardi*, No. 4:13-cv-458, 2013 WL 3489870, at *2-3 (E.D. Mo. July 10, 2013) (dismissing a prisoner's access to the courts claim when there was no actual injury resulting from the recording of his phone calls with counsel and the mere chilling effect on discussions with counsel was not enough); *Walen,* 2009 WL 3012351, at *4 (granting summary judgment when there was no evidence a prisoner suffered an actual injury as a result of the recording of his phone calls with counsel).

### D. Right to Counsel Claim

Plaintiff says Defendants violated his Sixth Amendment right to counsel. As explained by the Eighth Circuit, the "accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him." *Mastrian v. McManus*, 554 F.2d 813, 821 (8th Cir. 1977). Thus, to establish a Sixth Amendment violation, there must be facts suggesting the: (1) government knowingly intruded into the attorney-client relationship; and (2) intrusion demonstrably prejudiced the defendant or created a substantial threat of prejudice. *United States v. Sawatzky*, 994 F.3d 919, 923 (8th Cir. 2021); *see also Mastrian*, 554 F.2d at 821 (monitoring a criminal defendant's in-person conversations with counsel could establish a Sixth Amendment violation if "the substance of the overheard conversation was of some benefit to enforcement officials"); *Miller v. Davidson,* No. 4:21-cv-3092, 2021 WL 4132420 (D. Neb. Sept. 10, 2021) (recording a criminal defendant's telephone conversations with his attorney could be a Sixth Amendment violation if it

12

"was of some benefit to the prosecution").

As discussed in the previous section of this Recommendation, Plaintiff has not produced any evidence demonstrating he was harmed by the two recorded conversations with attorney's office. Thus, Defendants are entitled to summary judgment on this claim.

### E.     Search and Seizure Claim

Plaintiff says Defendants violated his Fourth Amendment rights when they listened to and recorded his calls with counsel without a warrant or his consent and gave those recordings to prosecutors. The Fourth Amendment protections extend "to the recording of oral statements." *Katz v. United States*, 389 U.S. 347, 353 (1967). Unlike his access to the courts and right to counsel claims, Plaintiff does not have to establish an injury. Instead, to proceed to trial with his Fourth Amendment claim, there must be evidence Plaintiff: (1) had an actual, subjective expectation of privacy, and (2) "the expectation is objectively reasonable; that is, one that society is willing to accept." *United States v. Long*, 797 F.3d 558, 564 (8th Cir. 2015); *see also United States v. Shipton*, 5 F.4th 933, 936 (8th Cir. 2021). In contrast, if Plaintiff knew his phone calls to counsel were being monitored, he had no expectation of privacy and his Sixth Amendment claim fails as a matter of law. *See United States v. Eggleston*, 165 F.3d 624, 626 (8th Cir. 1999) ("If someone agrees that the police may listen to his conversations and may record them, all reasonable expectation of privacy is lost"); *McCotry v. Holloway*, No. 5:22-CV-05118, 2022 WL 3354790, at *2 (W.D. Ark. July 25, 2022), *rec. adopted*, 2022 WL 3354779 (W.D. Ark. Aug. 12, 2022) ("Inmates have no reasonable expectation of privacy when they are aware of the existence of a monitoring program and choose to utilize that method of communication anyway").

As previously discussed, Plaintiff has not come forward with any evidence demonstrating his recorded phone calls with Shaw's office were given to state or federal prosecutors.

Additionally, Defendants argue Plaintiff had no subjective or objective expectation of privacy during those phone calls because: (1) yellow placards by the pod phones warned users "THESE CALLS ARE RECORDED"; (2) the SCDC's Inmate Rules told detainees that all calls made from the pod phones were "subject to being recorded and monitored"; and (3) the recorded message at the beginning of every phone call warned that it would be recorded.

As to the first assertion, Plaintiff says in his verified Response that no such placards were by the pod phones while he was in the SCDC. (Doc. 128 at ¶ 35). I find a genuine issue of material fact on the first point. However, I find Plaintiff's evidence falls short as to the other two notices that his calls were being recorded.

Specifically, Plaintiff says he did not receive a copy of the SCDC's Inmate Rules.[4] But Plaintiff's numerous grievances and inmate requests demonstrate he was very familiar with the SCDC's rules. (Doc. 119-2.) And Plaintiff admitted in two of those grievances that the jail rules were available to him on the inmate kiosk. (*Id.* at 121-122.) More importantly, the parties agree both calls Plaintiff made to his attorney's office started with the recorded message that unequivocally told Plaintiff "this call is subject to recording and monitoring." Plaintiff attempts to manufacture a fact issue here by claiming Sheriff Wright told him the warning was meaningless and that any calls he made to his attorneys' phone numbers would not be recorded.[5] But Plaintiff

---

[4] In the Reply, Defendants say Plaintiff admitted in his verified Second Amended Complaint (Doc. 41 at ¶ 24-25) that "he received written confirmation regarding SCDC's call recording policies." (Doc. 131 at 10.) I disagree. In those two paragraphs, Plaintiff said Defendant Wright and other SCDC officers assured him calls made on the pod phones to numbers he designated as belonging to his attorney would not be recorded. Plaintiff does not admit or deny receiving a copy of the SCDC's Inmate Rules.

[5] I disagree with Defendants' argument that Plaintiff's testimony about what Defendant Sheriff allegedly told him is inadmissible hearsay. *See* Fed. R. Evid. 801(d)(2).

has absolutely no evidence that he provided Sheriff Wright with his attorney's phone numbers. Further, it is undisputed Plaintiff, who knew he was calling his attorney's office, began both calls with the bizarre instruction that "Mom" should not send money to the jail. Defendants suggest this was some type of code phrase to alert the receiver that the call was being monitored. And Plaintiff has not offered any contrary explanation. Finally, the undisputed fact that Plaintiff did not make any incriminating or harmful statements during those two phone calls indicates he knew they were being monitored.

In sum, Plaintiff's evidence here is simply too tenuous and speculative to allow a reasonable juror to conclude he had a subjective or objective expectation of privacy when he made the two recorded calls to his attorney's office.[6]  *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790-91 (8th Cir. 2009) (to defeat summary judgment, a "plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor without resort to speculation, conjecture, or fantasy") (internal quotations and citations omitted). Accordingly, I conclude all three Defendants are entitled to summary judgment on Plaintiff's search and seizure claim.

---

[6] To rule in Plaintiff's favor, a jury would have to find: (1) Plaintiff never received a copy of the SCDC's phone rules; (2) the phone rules were not on the kiosk; (3) there was no written warning by the pod phones; (4) Plaintiff did not have access to a private, attorney phone in the intake area; (5) Sheriff Wright told Plaintiff to disregard the recorded warning at the beginning of the phone calls; (6) Plaintiff mistakenly thought he was calling his mother, instead of his attorney's office, instead of alerting the receiver (in code) that the call was being recorded; and (7) still believing his phone calls were private and not being recorded, Plaintiff nevertheless proceeded to make no incriminating or harmful comments to his attorney. That is simply a bridge too far.

### F.  Free Speech Claim

Plaintiff says Defendants violated his free speech rights by recording his calls with counsel. The First Amendment right to free speech extends to a prisoner's communication with counsel. *Laughlin v. Stuart*, No. 19-cv-2547, 2022 WL 666738, at *14 (D. Minn. Jan. 21, 2022), *aff'd* No. 22-1742, 2022 WL 12165755 (Oct. 21, 2022); *Foster v. Helling*, No. 99-4094, 2000 WL 328116, at *1 (8th Cir. 2000); *Thongvanh v. Thalacker,* 17 F.3d 256, 258-59 (8th Cir. 1994).   Prisoners do <u>not</u> have to establish an actual injury to proceed with such a claim under the freedom of speech clause.  *Laughlin,* 2022 WL 666738*; Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1212-13 (9th Cir. 2017); *Shreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012); *Al-Amin v. Smith*, 511 F.3d 1317, 1333-34 (11th Cir. 2008); *Blair-Hanson v. Johnson,* No. 19-cv-2195, 2020 WL 5105775, at *4 (D. Minn. Aug. 31, 2020).   Instead, they must show the intrusion was a custom or practice, rather than an isolated incident.  *See Blair-Hanson*, 2020 WL 5105775 (collecting cases from other federal courts regarding the intrusion into written communications with counsel); *see also Andersen*, 2009 WL 3164769, at *8-9 (reaching same conclusion in regard to phone calls with counsel).

Although the parties disagree about the terms, they agree the SCDC had in place a policy that allowed detainees to make confidential calls to counsel.  Plaintiff alleges Defendant Wright and the county had a custom or practice of disregarding that policy by recording calls with counsel and turning them over to prosecutors without the detainee's knowledge or consent.  However, Plaintiff has not offered any evidence to support the existence of any such widespread practice or custom.  *See Meier v. City of St. Louis, Missouri*, 78 F.4th 1052, 1058 (8th Cir. 2023) (to establish an unconstitutional policy or practice there must be evidence "of a continuing, widespread, persistent pattern of unconstitutional misconduct"); *Hall v. Higgins*, 77 F.4th 1171, 1180 (8th Cir. 2023) ("The pattern of unconstitutional conduct must be so pervasive and widespread so as to have

the effect and force of law.") Instead, Plaintiff has produced only two recorded conversations with his attorney's office and no evidence that either of them were given to prosecuting authorities. *See Corwin v. City of Indep., MO.*, 829 F.3d 695, 700 (8th Cir. 2016) ("Generally, an isolated incident of alleged ... misconduct ... cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983"); *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) ("two incidents" cannot be "considered a pattern of widespread and pervasive unconstitutional conduct"). Accordingly, I conclude all three Defendants are entitled to summary judgment on Plaintiff's free speech claim.

### G. Intrusion Claim

Finally, Plaintiff alleges Defendants committed the Arkansas tort of intrusion, which is one of the four types of invasion-of-privacy claims. *See Milam v. Bank of Cabot,* 937 S.W.2d 653, 657 (Ark. 1997). To proceed to trial with that claim, there must be evidence: "(1) that the plaintiff sustained damages; (2) that the defendant intentionally intruded physically or otherwise upon plaintiff's solitude or seclusion and believed or was substantially certain that the defendant lacked the necessary legal authority or personal permission, invitation, or valid consent to commit the intrusive act; (3) that the intrusion was of a kind that would be highly offensive to a reasonable person, as the result of conduct to which a reasonable person would strongly object; (4) that the plaintiff conducted himself or herself in a manner consistent with an actual expectation of privacy; and (5) that the defendant's intrusion was the proximate cause of the plaintiff's damages." *Duggar v. City of Springdale,* 599 S.W.3d 672, 683 (Ark. 2020).

For the reasons previously explained, I conclude there is insufficient evidence Plaintiff had an expectation of privacy in the two recorded calls with his attorney's office or that he was harmed. Because the parties have already expended considerable time and resources litigating

17

this case, I recommend Defendants be granted summary judgment and this state claim be dismissed with prejudice as a matter of law. In the alternative, the Court could decline to exercise supplemental jurisdiction over this state claim and dismiss it without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Williams v. Hobbs*, 658 F.3d 842, 843 (8th Cir. 2011) (a federal district court may decline to exercise supplemental jurisdiction over pendent state law claims when the court has dismissed all federal claims over which it had original jurisdiction).

## V. COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Because I have already concluded all three remaining Defendants are entitled to summary judgment based on the arguments raised in the Joint Motion, I will address the additional arguments raised by the County Defendants only briefly.

The County Defendant's first argument that the SCDC cannot be sued is frivolous because, as was clearly established in the Second Amended Complaint and two prior Partial Recommendations, it is <u>not</u> a Defendant in this lawsuit. (Docs. 41, 62, 80). Defendants' negligence argument is equally frivolous because Plaintiff's constitutional and state tort claims are based on intentional conduct. And Defendants' third argument regarding respondeat superior liability has no merit because Plaintiff says Sheriff Wright personally participated in the alleged constitutional violations by telling him calls to his attorney would not be recorded or monitored. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (because there is no vicarious liability in § 1983 there must be evidence that each defendant "through the official's own individual actions, has violated the Constitution").

However, I agree Defendant Wright is entitled to qualified immunity, in his individual capacity, because there is no credible evidence of an underlying constitutional violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For the same reason, the *Monell* official capacity

claims against Defendant Saline County fails. *See Aldridge v. City of St. Louis, MO.,* 75 F.4th 895, 901 (8th Cir. 2023) (the Eighth Circuit has "consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim"); *Rusness v. Becker Cnty., MN*, 31 F.4th 606, 617 (8th Cir. 2022) ("the existence of a constitutional violation is a threshold issue for a *Monell* claim to move forward").

## VI.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Joint Motion for Summary Judgment (Doc. 119) be GRANTED; Plaintiff's access to the courts, right to counsel, search and seizure, free speech, and Arkansas intrusion claims against Defendants Sheriff Rodney Wright, Saline County, and Aventiv Technologies LLC be DISMISSED with prejudice; and this case be CLOSED.

2. The County Defendants' Separate Motion for Summary Judgment (Doc. 122) be GRANTED in part and DENIED in part as specified herein.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

DATED this 3rd day of April 2024.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE